UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RONALD AUSTIN THOMAS,** ) | NO. EDCV 06-453-MAN |
| ) | |
| Plaintiff, ) | |
| ) | MEMORANDUM OPINION |
| v. ) | |
| ) | AND ORDER |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of the** ) | |
| **Social Security Administration,** ) | |
| ) | |
| Defendant. ) | |
| _____) | |

Plaintiff filed a Complaint on May 12, 2006, seeking review of the denial by the Social Security Commissioner ("Commissioner")[1] of plaintiff's claim for supplemental security income ("SSI"). On May 31, 2006, the parties consented to proceed before the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c). The parties filed a Joint Stipulation on February 28, 2007, in which: Plaintiff seeks an order reversing the Commissioner's decision denying benefits and directing the payment of benefits or, alternatively, remanding the

---

[1] Michael J. Astrue became the Commissioner of the Social Security Administration on February 12, 2007, and is substituted in place of former Commissioner Joanne B. Barnhart as the Defendant in this action. (*See* Fed. R. Civ. P. 25(d)(1); Section 205(g) of the Social Security Act, last sentence, 42 U.S.C. § 405(g).)

case for a new hearing; and Defendant requests that the Commissioner's decision be affirmed. The Court has taken the parties' Joint Stipulation under submission without oral argument.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

Plaintiff filed his current application for SSI on June 5, 2001. (Administrative Record ("A.R.") 84-85.) Plaintiff claims to have been disabled since April 17, 2001, due to problems with his back and feet, complications following right shoulder surgery, stress, headaches, and nervousness. (A.R. 13, 84, 95.) Plaintiff also complains of the following mental impairments: affective mood disorder, depression, and personality disorder, not otherwise specified, with antisocial features; borderline intelligence; and substance abuse in total remission. (A.R. 279.) He has past relevant work experience as a dishwasher, kitchen helper, janitor, stocker, and shipping and receiving clerk. (A.R. 16, 96, 116, 281, 418.)

The Commissioner denied Plaintiff's SSI claim initially and upon reconsideration. On January 13, 2003, Plaintiff, who was not represented, testified at a hearing before Administrative Law Judge ("ALJ") Helen E. Hesse. (A.R. 29-60.) On April 16, 2003, the ALJ issued a decision denying Plaintiff's claim, and the Appeals Council subsequently denied Plaintiff's request for review of the ALJ's decision. (A.R. 3-4, 12-17.) Plaintiff brought a civil action in the United States District Court for the Central District of California (Case No. EDCV 03-00939-MAN), which resulted in a reversal of the ALJ's decision and a remand to the Commissioner on November 24, 2004. (A.R.

276, 352-66.)  On remand, the Appeals Council vacated the ALJ's decision and sent the matter back to the ALJ for reconsideration.  (A.R. 276, 367-70.)  On September 6, 2005, Plaintiff, who was represented by counsel, testified at a hearing before ALJ John W. Belcher.  (A.R. 536-79.)  Testimony also was given by Dr. Joseph Malancharuvil, a Medical Expert ("ME"), and Sandra Fioretti, a Vocational Expert ("VE").  (A.R. 276, 536.)  On February 22, 2006, the ALJ, again, denied Plaintiff's request for SSI.  (A.R. 282.)

**SUMMARY OF ADMINISTRATIVE DECISION**

In the most recent, February 22, 2006 written decision, the ALJ found that Plaintiff has not engaged in substantial gainful activity during the period at issue.  (A.R. 278.)  The ALJ found that Plaintiff has severe impairments consisting of:  affective mood disorder; depression; personality disorder, not otherwise specified, with antisocial features; and right foot pain due to a crushing injury.  (A.R. 279.)  The ALJ further found, however, that Plaintiff does not have an impairment or combination of impairments listed in, or medically equivalent to an impairment listed in, Appendix 1, Subpart P, Regulation No. 4.  (*Id*.)  In addition, the ALJ found that Plaintiff was "a younger individual age 18-44," pursuant to 20 C.F.R. § 416.963, with at least a high school education and the ability to communicate in English, pursuant to 20 C.F.R. § 416.964.  (A.R. 281.)  Further, although the ALJ found Plaintiff's medically determinable impairments could reasonably produce the symptoms alleged by Plaintiff, the ALJ did not find Plaintiff credible with regard to the intensity, duration, and limiting effects of his alleged symptoms.  (A.R. 280.)

The ALJ determined that Plaintiff has the residual functional capacity to perform light work.[2] (A.R. 279.) The ALJ additionally determined that Plaintiff: could stand/walk for six hours in an eight-hour day; sit for six hours; *occasionally* reach above shoulder level; avoid working around hazardous and fast machinery; and further, because of his foot and back pain, be allowed to change positions with a sit/stand option for one to three minutes in every hour. (*Id.*) The ALJ further found that, mentally, Plaintiff is capable of performing simple, four to five step, repetitive, object oriented tasked, in a habituated setting, with no responsibility for safety operations and no intense interpersonal interaction with the general public. (*Id.*)

Based on this residual functional capacity assessment, the ALJ found that Plaintiff was unable to perform his past relevant work. (A.R. 281.) *See* 20 C.F.R. § 416.965. Using Medical-Vocational Guidelines Rule 202.20 as an initial framework for analysis, but relying upon the VE's testimony to take into account additional limitations, the ALJ found that Plaintiff can perform a significant number of jobs in the regional economy, such as "bench assembler," "small products assembler," and "plastic parts assembler." (A.R. 281-82.)

**STANDARD OF REVIEW**

This Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial

---

[2] "Light work" involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b).

4

evidence. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996). The Commissioner's decision must stand if it is supported by substantial evidence and applies the appropriate legal standards. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). Substantial evidence is "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995).

Although this Court cannot substitute its discretion for that of the Commissioner, this Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y. of Health and Human Serv., 846 F.2d 573, 576 (9th Cir. 1988); *see also* Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995). This Court must uphold the Commissioner's decision if it is supported by substantial evidence and free from legal error, even when the record reasonably supports more than one rational interpretation of the evidence. *Id.* at 1041; *see also* Morgan v. Comm'r. of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Flaten v. Secretary, 44 F.3d 1453, 1457 (9th Cir. 1995).

**DISCUSSION**

Plaintiff alleges one issue. Plaintiff contends that the Commissioner did not sustain his burden of proving there is "other work" in the national economy that Plaintiff can perform. (Joint Stipulation

5

("J.S.") 3.)

The Commissioner may meet this burden in one of two ways: (1) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2; or (2) through the testimony of a VE. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); *see also* Tackett v. Apfel, 180 F.3d 1094, 1100-01 (9th Cir. 1999). If a claimant has significant non-exertional impairments,[3] however, reliance on the Guidelines may not be appropriate. Osenbrock, 240 F.3d at 1162; *see also* Desrosiers, 846 F.2d at 577.

Here, because the ALJ assessed Plaintiff with both significant exertional and non-exertional impairments, the ALJ appropriately sought the testimony of the VE "to determine the extent to which [Plaintiff's] limitations erode the unskilled light occupational base" and to determine "whether jobs exist in the national economy for an individual with the claimant's age, education, and residual functional capacity." (A.R. 281.) "A VE's recognized expertise provides the necessary foundation for his or her testimony." Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005).

The ALJ posed the following hypothetical to the VE to determine Plaintiff's work ability, taking into account a specialized "light work"

---

[3] Non-exertional limitations are those that the claimant suffers from whether or not he exerts himself, such as pain, postural limitations, environmental limitations, or mental impairments. *See* 20 C.F.R. pt. 404, subpt. P, app. 2, rule 200(e).

6

residual functional capacity[4]:

> I want you to assume a 47-year old individual with a limited education, even though he's testified that he did, in fact, get a diploma, he also testified that he has a great deal of difficulty in reading so I'm going to accept that testimony and provide him with a limited education and work experience as outlined by yourself through your report and the testimony today. This individual would be limited to lifting no more than 20 pounds occasionally, 10 pounds frequently, with pushing and pulling consistent with the lifting and carrying limitations. The person could stand or walk for six hours out of an eight hour day, and sit for six hours out of an eight hour day, provided he was allowed to change positions one to three minutes an hour. The person could reach above the head with the right hand on an occasional basis. He could not work around hazardous or fast paced machinery or, and

---

[4]  The ALJ determined that Plaintiff has the residual functional capacity to perform light work, with some limitations. The ALJ specified:

> Specifically [Plaintiff] can lift and/or carry 20 pounds occasionally and 10 pounds frequently due to alleged back pain and foot disorder. Pushing and pulling limitations are consistent with lifting and carrying. He can stand and/or walk for 6 hours of an 8-hour workday and sit for 6 hours. He should be allowed to change positions with a sit/stand option for 1-3 minutes in every hour due to foot and back pain. He can occasionally reach above shoulder level. The claimant should avoid working around hazardous and fast machinery. Mentally, the claimant is capable of performing 4-5 step, simple, repetitive, object oriented tasks in a habituated setting, with no responsibility for safety operations and no intense interpersonal interaction with the general public.

(A.R. 279.)

7

>tasks involving driving.  He would need to be limited to three, four step simple repetitive tasks in an habituated work setting that is also object oriented.  He should perform no duties which require safety operations or hypervigilance.  I want him to have no contact with the public, and only limited contact with coworkers.

(A.R. 573-74.)

This hypothetical and the related VE's opinion, on which the ALJ relied in his decision, take into account all of Plaintiff's limitations. (*See* A.R. 279.)  Indeed, Plaintiff does not challenge the propriety of the hypothetical posed.  *See* Bayliss, 427 F.3d at 1218 (ALJ's reliance on VE opinion proper when hypothetical to VE contained all the limitations the ALJ had found credible and supported by substantial evidence).  While the VE did not conclude that Plaintiff would be able to return to his previous employment, or that he had any transferable skills, she did opine that there is work within the regional and national economy that Plaintiff could perform.  (A.R. 281-82, 574.)  More specifically, based on the above-quoted hypothetical, the VE opined that Plaintiff could perform a variety of jobs, including bench assembler, small products assembler II, and assembler of plastic hospital products, which are at the "light" level.  (A.R. 574-75.)  The VE further opined, however, that because of Plaintiff's additional restrictions, he is not able to perform all "light work" as it is described in the DOT.  Consequently, the VE testified that the job availability for someone of his specific limitations would be eroded by 75 percent.  (*Id.*)

8

Plaintiff argues that the VE's finding does not constitute substantial evidence, because the VE failed to adequately support her deviation from the Dictionary of Occupation Titles ("DOT") job descriptions for these positions. Plaintiff's contention rests on a misapprehension of the VE's testimony. The VE did not testify that Plaintiff could perform all jobs within a given category, but rather that he could perform some of the jobs within that category. "Because vocational experts discuss more specific jobs than the general category of jobs found in the DOT, that the DOT has other jobs which also fall into the general 'category' of work that [Plaintiff] is able to perform is of no moment." Moncada, 60 F.3d at 524. Vocational experts may "testify whether particular applicants for disability benefits would be able to perform subcategories of jobs within the DOT." Distasio v. Shalala, 47 F.3d 348, 350 (9th Cir. 1995); *see also* Barker v. Sec'y. of Health and Human Svcs., 882 F.2d 1474, 1478, n.1 (9th Cir. 1989)(VE may testify as to work which he described as "light" even though the same category of job is listed as "medium" in the DOT).

Although the ALJ generally noted that Plaintiff "would be able to perform the requirements of representative occupations such as bench assembler, small products assembler, and plastic parts assembler," he also specifically noted the erosion of these jobs by 75 percent. (A.R. 282). The VE never testified, nor did the ALJ conclude, that Plaintiff could perform all of the activities listed in a DOT description. Both the VE and the ALJ found that the number of jobs available within those descriptions was reduced substantially to reflect Plaintiff's limitations.

Plaintiff contends that the VE's testimony, nonetheless, was error because, according to the DOT descriptions, the work of a bench assembler, small products assembler, and plastic parts assembler "all require *frequent* reaching and the use of machinery, such as *powered tools, arbor presses, drill presses, spot-welding machines, riveting machines, milling machines, metal cutters, ultrasonic welding machines, vibrating hoppers, conveyors,* etc." (J.S. 3-4; emphasis in original.) This is a mischaracterization of the DOT descriptions. Not all jobs in a given category require all activities as described. For instance, the bench assembler description clearly states that a worker in this area "performs *any combination of* the following repetitive tasks," which include: positioning parts "in specified relationship to each other, using hands, tweezers, or tongs," fastening parts together by hand, handtools *or* powertools, frequently working at bench as member of assembly group, as well as *loading and unloading machines*. (DICOT 706.684-022; emphasis added.) Nowhere is it indicated that the VE or ALJ contemplated that Plaintiff would be able to perform all the work as described for each job the VE found Plaintiff capable of performing. While these jobs can require work beyond Plaintiff's residual functional capacity, the VE *eroded* the number of available positions to take into account Plaintiff's limited abilities. The substantial erosion of the occupational base by the VE highlights her clear, if implicit, recognition that Plaintiff would not be able to perform all aspects of the jobs described in the DOT. *See* Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (reasonable inferences may be drawn from the record). As a result, Plaintiff's contention that the ALJ did not correctly take into account Plaintiff's specific impairments and residual functional capacity is misguided.

The VE's testimony indicated that the jobs available to Plaintiff existed in significant numbers regionally.[5] The Ninth Circuit "has never clearly established the minimum number of jobs necessary to constitute a 'significant number.'" Barker, 882 F.2d at 1478-79 (finding that 1,266 jobs regionally constituted a significant number). Despite the 75 percent reduction of the occupational base, there were still 750 regional and 9,000 national bench assembler positions, 2,400 regional and 20,000 national small products assembler II positions, and 600 regional and 3,800 plastic hospital products assembler positions. Taken together, and based on Circuit precedent, the total number of jobs available to Plaintiff regionally (3,750) clearly remains significant.[6] *See* Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999)(finding that between 1,000 and 1,500 jobs locally was significant); Moncada, 60 F.3d at 524 (2,300 jobs within San Diego County was significant).

Accordingly, substantial evidence of record establishes that there

---

[5] The VE identified the region as Los Angeles, Orange, San Bernardino, and Riverside counties. (A.R. 573).

[6] The ALJ posed a second hypothetical that was significantly more limiting than his first. In addition to the limitations included in the first hypothetical, the second hypothetical assumed that Plaintiff: (1) could not work more than two hours out of an eight hour day on his feet, and (2) he would need to be able to alternate between sitting and standing at will during the eight hour day. (A.R. 575.) Based on this hypothetical, the VE determined that Plaintiff would still be able to perform the work previously mentioned, but that there would be a 90 percent erosion for each position. (A.R. 575-76.) That is, there would be 300 regional and 3,600 national bench assembler positions, 960 regional and 8,000 small products assembler II positions, and 240 regional and 1,520 plastic hospital products assembler positions, available to a person with his limitations. (A.R. 576.) Additionally, he would be able to do sedentary assembly work, such as an assembler in buttons and notions. (*Id.*) However, due to his restrictions, jobs of this kind would be eroded by 50 percent, leaving 600 regionally and 8,000 nationally. (*Id.*) Taken as a whole, these jobs, which total 2,100 in number, exist in significant number.

is "other work" in the economy, in significant numbers, that Plaintiff can perform, and neither reversal nor remand is warranted on this basis.

## CONCLUSION

For all of the foregoing reasons, the Court finds that the Commissioner's decision is based on the correct application of the proper legal standards and is supported by substantial evidence, and that neither reversal of the ALJ's decision nor remand is warranted. Accordingly, IT IS ORDERED that Judgment shall be entered affirming the decision of the Commissioner of the Social Security Administration.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: August 14, 2007

/s/
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE